RESOLUTION TRUST CORPORATION, as Conservator for Great American First Savings Bank,

v.

BAYSIDE DEVELOPERS.

No. C–92–0917–CAL.

United States District Court, N.D. California.

Feb. 9, 1993.

As Amended March 4, 1993.

Dennis Sanford Klein, Hughes Hubbard & Reed, Washington, DC, for plaintiff.

Sandra Naisbitt Rowell, Woodside, CA, for defendant.

## AMENDED OPINION

LEGGE, District Judge.

The appointment of the plaintiff Resolution Trust Corporation to be the conservator of former plaintiff Great American First Savings Bank has placed this case in a unique posture. That is, this federal trial court is now sitting in review of a decision of a state court of appeal, on an issue of state real estate law. This opinion will first discuss how the case got to this point. This court will then discuss what it believes must be decided under California law and under this record; that is, it must disagree with the California Court of Appeal on the application of a state statute. Because of the novel procedure, and because this court does disagree with the California court on an issue of state law, it is appropriate to review the facts and the procedure in some detail.

### I.

In 1984 Great American First Savings Bank loaned defendant Bayside Developers $10,600,000 to construct a townhouse development. Bayside gave Great American a promissory note secured by a deed of trust on the property. Under a price-release agreement between the parties, as each lot was sold it was released from the deed of trust and a portion of the sales proceeds was paid to Great American with the balance going to Bayside.

Bayside defaulted on its obligations to Great American in August 1986, when about

half of the lots were developed. In May 1987 Great American recorded a notice of default against the property. In June 1987 Great American filed an action in the California Superior Court for specific performance of the rents and profits clause in the deed of trust. Great American also petitioned that court to appoint a receiver, which Bayside did not oppose and which the court granted. At that time 32 condominiums had been completed; sales escrows were pending on nine of those units, and the rest had already been sold. The court-appointed receiver closed the escrows on the nine pending sales. Some of those sales proceeds were paid to Great American under the price-release agreement, and the receiver retained the excess of $312,318. The receiver also retained $160,000 resulting from the sale of two condominiums which were subject to liens in addition to Great American's deed of trust. The receiver also sold furniture which had been used as models in the display units. Great American later sold the remaining raw land to itself in a non-judicial foreclosure sale.

The receiver was discharged in August 1988. At that time the receiver was ordered to turn over to Great American the $312,318 which he held. The $160,000 was held by the state court pending claims by other creditors. At that time Bayside still owed Great American over $4,500,000. Great American also received $1.7 million from the sale of land in the project which had not yet been developed.

## II.

Great American moved for summary judgment for the $312,318 and the $160,000. The Superior Court granted Great American's motion, holding that it was entitled to all of the monies held by the receiver.

The California Court of Appeal reversed, holding that the trial court had made errors of law. *Great American First Savings Bank v. Bayside Developers*, 232 Cal.App.3d 1546, 284 Cal.Rptr. 194 (1991).[1] First, the appellate court held that Great American's complaint had only sought specific performance

of the "rents, issues, and profits" clause. Therefore, the receiver was not authorized to *sell* any of the property, and the trial court did not have authority to allow the receiver to sell anything. *Great American*, 284 Cal. Rptr. at 199.

Second, the appellate court held that Great American had violated California Code of Civil Procedure § 726, the one-form-of-action statute. Section 726 acts as an election of remedies requirement for creditors. The rule has two requirements that are relevant here: (1) a creditor is limited to one "action" or lawsuit to enforce a debt; and (2) a creditor who does not exhaust the real property security before enforcing the underlying debt forfeits the security. *Security Pacific Nat'l Bank v. Wozab*, 51 Cal.3d 991, 275 Cal.Rptr. 201, 204, 800 P.2d 557, 560 (1990). The Court of Appeal held that Great American's application of the sales money, which it had obtained from the receiver, to the debt was analogous to an "offset"—an improper method of obtaining money directly from the debtor before levying on the real property security—causing Great American to forfeit its foreclosure rights. *Great American*, 284 Cal.Rptr. at 201. The appellate court also held that Great American had improperly appropriated the funds from the sale of the furniture, which was also a violation of the "security first" rule.

The California Court of Appeal's decision was entered on August 6, 1991. Under California Rules of Court No. 24, that appellate decision would have become final 30 days later unless a petition for rehearing were filed.

## III.

At that point, this case began its circuitous route to this court and to its present posture.

On August 9, 1991 the Resolution Trust Corporation ("RTC") was appointed the conservator for Great American. On August 19, 1991 RTC requested a stay from the California Court of Appeal. The Court of Appeal granted a stay of all proceedings from Au-

---

1. The opinion was decertified for publication by the California Supreme Court after it had been published. 92 C.D.O.S. 2217 (Cal.1992). Page numbers from the published opinion will be used for ease of reference here.

gust 19 through October 4, 1991, and extended the time for the filing of a petition for rehearing to October 7, 1991. The Court of Appeal ordered that if a petition for rehearing was not filed by October 7, 1991, its decision would become final on October 21, 1991, pursuant to Rule 24. On October 7, 1991, the RTC and Great American filed a petition for a rehearing. Also on October 7, 1991, RTC removed the case to federal court pursuant to 12 U.S.C. § 1441a($l$)(3).

The California Court of Appeal's decision did not become final on October 21 because a petition for a rehearing was timely filed. In addition, it did not become final because the case was removed on October 7, 1991. Title 28 U.S.C. § 1446(d) provides that upon removal of an action and the filing of a copy of the petition for removal with the clerk of the court, the state court is prohibited from any further proceedings "unless and until the case is remanded." Removal effectively deprives the state court of its jurisdiction over the removed case. *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1254 (11th Cir.1988).

The case was originally removed to the United States District Court for the District of Columbia. That District Court then denied Bayside's motion to remand the case to state court pursuant to 28 U.S.C. § 1446(d). And it transferred the case to this court.

When the case arrived here, Bayside again moved to remand. This court denied that motion and decided, for the reasons discussed below, that this court has jurisdiction and that it sits as if it were reviewing the decision of the California Court of Appeal. That posture is to say the least unusual, but it is the result which this court believes is compelled by the federal jurisdiction defined by Congress.

This court then addressed the merits of the California Court of Appeal's decision. Both sides submitted an agreed-upon record

and briefs. Briefs were also filed by the California Banking Association, the California League of Savings Institutions, and Homefed Bank as *amici curiae.* The issues were argued and submitted for decision. This court has reviewed the record, the Court of Appeal's decision, the briefs and arguments of counsel and the applicable authorities.

This court respectfully concludes that the California Court of Appeal erred in its application of California law to these facts, and that the decision must be vacated and the decision of the Superior Court reinstated. Again, this court recognizes that it is intruding into state law and procedure, but concludes that it is required to do so.

### IV.

■ This unique posture results from the fact that this case came to the federal courts after it was already on appeal in the state courts. That is permitted by the special removal powers given by Congress to the RTC:

> The [RTC] may ... remove any such action, suit, or proceeding from a State court to the United States District Court for the District of Columbia, or if the action, suit, or proceeding arises out of the actions of the [RTC] with respect to an institution for which a conservator or a receiver has been appointed, the United States district court for the district where the institution's principal business is located. *The removal of any action, suit, or proceeding shall be instituted—(A) not later than 90 days after the date the [RTC] is substituted as a party* ... (emphasis added).

12 U.S.C. § 1441a($l$)(3) (West Supp.1992). The statute expressly contemplates removal later than is allowed in most cases. Removal is allowed after the RTC is substituted as a party.[2] *See In re Meyerland Co.,* 960 F.2d

---

**2.** Although the RTC has not been formally substituted as a party in this case, it is a successor in interest to the original plaintiff, Great American Bank. Most courts have not required formal substitution when the FDIC or FSLIC becomes a conservator or receiver for a failed institution. *See, e.g., Bank of Oklahoma v. Islands Marina Ltd.,* 918 F.2d 1476, 1479 (10th Cir.1990); *Henry v. Independent American Sav. Ass'n.,* 857 F.2d

995, 998 (5th Cir.1988). *See also McCarthy Western Constructors, Inc. v. Phoenix Resort Corp.,* 951 F.2d 1137 (9th Cir.1991) (holding that RTC must be formally substituted when it was *not* a successor in interest).

Additionally, 12 U.S.C. § 1441a($l$)(3) was amended during the pendency of this action. Subsection (B) provides that "[t]he [RTC] shall

512, 521–22 (5th Cir.1992) *cert. denied* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993), (DeMoss, J., concurring). The statute does not limit removal to cases filed within a certain time period (*compare* 28 U.S.C. § 1446(b), *re* no removal based on diversity of citizenship more than one year after commencement of the action), or to cases pending in state *trial* courts.

■ Congress may constitutionally authorize removal of cases on appeal. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 349, 4 L.Ed. 97 (1816). However, the removal in this case, after the entry of a state appellate decision, is unusual.

Prior federal decisions have allowed the FDIC and FSLIC, under similar removal statutes, to remove cases which were then pending on appeal. *In re Meyerland Co.*, 960 F.2d 512 (5th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993); *Jackson v. American Sav. Mortgage Corp.*, 924 F.2d 195 (11th Cir.1991); *FDIC v. Yancey Camp Dev.*, 889 F.2d 647, 648 (5th Cir.1989); *In re Savers Fed. Sav. & Loan Assoc.*, 872 F.2d 963, 966 (11th Cir.1989).

The *Meyerland* court held that the FDIC removal statute permitted removal at the appellate stage, because it allowed the removal of "*any* such action, suit, or proceeding from *a state court* to the appropriate United States *district court.*" *Meyerland*, 960 F.2d at 516, *quoting* 12 U.S.C. § 1819(b)(2)(B) (emphasis in original). The RTC removal statute uses essentially the same words. *See* 12 U.S.C. § 1441a(*l* )(3). Courts must adhere to the plain language of a statute unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250,

73 L.Ed.2d 973 (1982). The *Meyerland* court said:

> The statute's plain language is quite plain: Any action in a state court may be removed. This language does not limit removable actions to those that have not yet reached a state trial court judgment, nor does it limit removable actions to those that come to the federal courts from a specific state court (i.e., from state trial, as opposed to appellate, court). Furthermore, the contrast between the broad "a state court" and the specific "United States district court" within the same sentence strongly suggests that the drafters intended the meaning urged by the [RTC].

*Meyerland* at 516.

■ Section 1441a(*l* )(3) "gives RTC greater removal authority than that available to others." *Hellon & Associates, Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 299 (9th Cir.1992). Congress granted the RTC broad removal powers apparently because of its policy that financial institution liquidations should be handled under a uniform body of law. Indeed, RTC's power to remove is considered so important that a district court's decision to remand to state court is appealable. 12 U.S.C. § 1441a(*l* )(3). Under general removal statutes, remand decisions are unappealable. 28 U.S.C. § 1447(d). Additionally, RTC can remove any case in which it is a party, not just when it is a defendant. *Compare* 28 U.S.C. § 1441(a). Thus, it appears that federal district courts must entertain *all* cases removed by the RTC so long as the judgment is not yet final.[3] As discussed above, the decision of the California Court of Appeal was not final at the time of the removal of this case.

### V.

■ The question is then how a federal district court handles a case that was removed after a state appellate decision. The U.S. Supreme Court has stated that on re-

---

be deemed substituted in any action, suit or proceeding for a party upon the filing of a copy of the order appointing the Corporation as conservator or receiver for that party or the filing of such other pleadings informing the court that the Corporation has been appointed conservator or receiver for such party." Where there is no clear indication of Congressional intent, and no "manifest injustice" will result, a statute may be

applied retroactively, especially if it is procedural in nature, and does not affect substantive rights. *See FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 487 (9th Cir.1991).

3. RTC would be bound by final unappealable judgments. 12 U.S.C. § 1441a(b)(4)(A); 12 U.S.C. § 1821(d)(13)(A).

moval a federal court must "take the case up where the State court left it off." *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974).

Although the *Meyerland* court mentioned the possibility of a district court reviewing a state court decision in an appellate posture, it did not rule on the propriety of such an appellate review. *Meyerland,* 960 F.2d at 520. Rather, it held that the district court should "take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review." *Meyerland,* 960 F.2d at 520. This court might adopt that procedure, rather than review the California appellate decision on its merits. However, the Eleventh Circuit, by contrast, has held that a district court must at least review the state court decision under the standard of a F.R.C.P. Rule 59 motion, because federal appellate jurisdiction extends only to a review of federal district court judgments, not to a review of state court judgments. *Jackson,* 924 F.2d at 198–99. In addition, the issues in this case are essentially ones of law. The Ninth Circuit can therefore review this court's decisions on the merits as easily as, and perhaps more quickly than, if this court were to simply package up the record and send it to the Circuit Court.

The state appellate decision here had already been made, but was not yet final, at the time of removal. A petition for rehearing was pending. Thus, "taking up the case where the state court left off," this court concludes that it must review the merits of the state appellate court decision.

## VI.

■ In such a review, does this court apply state law or seek to define a uniform federal law? In the context of this case, the question is of little significance. The application of either a federal common law (*see Ober v. Gallagher,* 93 U.S. 199, 23 L.Ed. 829 (1876); *Ingraham v. Williams,* 173 F.Supp. 1 (N.D.Cal.1959); Nelson & Whitman, *Real Estate Finance Law* § 8.1 (2d ed. 1985)), or California state law discussed below produces the same result.

Federal law generally governs cases in which the RTC is a party. *See FDIC v. O'Melveny & Meyers,* 969 F.2d 744, 751 (9th Cir.1992). RTC cases, like FDIC cases, "arise under the laws of the United States." 12 U.S.C. § 1441a(*l*)(1). That phrase is not merely jurisdictional. Although state law may be incorporated to provide a federal rule of decision, federal courts are not bound by state law, but "may draw on the federal law merchant as a convenient source of reference." *FDIC v. Bank of San Francisco,* 817 F.2d 1395, 1398 (9th Cir.1987). *See also, FDIC v. Ritchie,* 646 F.Supp. 1581 (D.Neb. 1986) (FDIC not barred from collecting deficiency judgment barred by state notification law); *FDIC v. Wood,* 758 F.2d 156 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985) (FDIC not barred from collecting on notes considered usurious under state law).

■ The factors to be considered when deciding whether to adopt state law or instead to "fashion a nationwide federal rule," include: (1) the need for nationwide uniformity in rules affecting federal programs; (2) the possibility that the "application of state law would frustrate specific objectives of the federal programs;" and (3) the possibility that the application of a federal rule would "disrupt commercial relationships predicated on state law." *United States v. Kimbell Foods Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979).

In this case, the issue on the merits concerns the interpretation of a specific state statute, California Code of Civil Procedure § 726. California has a valid state interest in the protection of debtors, as § 726 is designed to do. *Wozab,* 275 Cal.Rptr. at 204, 800 P.2d at 560. The Ninth Circuit has stated that "courts should not create federal law by implication that is antithetical to state laws protecting debtors unless doing so is necessary to achieve the overriding purposes of Congress in enacting the statutes ... or to preserve some other paramount federal interest." *United States v. Pastos,* 781 F.2d 747, 751 (9th Cir.1986).

It does not appear that there is a paramount federal interest here. The California

courts have already made decisions in this case. RTC did not come into the case until after the appellate decision. And RTC is now contending that the state appellate court's decision was wrong as a matter of state law, not that it conflicts with any federal law or policy. The appellate decision, while one of law, was fact-specific in its application to this case. And the issue turns on the interpretation of the California statute. This court is therefore not prepared to ignore all of those state interests and attempt to divine a federal one-form-of-action common law. California law will therefore be adopted to furnish the basis for the decision in this case.

## VII.

This court now turns to the merits of the dispute.

■ The California Court of Appeal based its decision on Code of Civil Procedure § 726. Section 726 is an election of remedies statute designed to protect debtors. Insofar as applicable here, the purposes of § 726 are to (1) prevent multiplicity of suits and (2) force the creditor to look to the security in order to satisfy the debt before proceeding against the debtor or the debtor's unencumbered assets. *Walker v. Community Bank*, 10 Cal.3d 729, 111 Cal.Rptr. 897, 901, 518 P.2d 329, 333 (1974). The section provides that a creditor may bring only one action to collect on a debt. And a creditor must proceed against the security in order to enforce the debt. *Wozab*, 275 Cal.Rptr. at 208–9, 800 P.2d at 564–65.

In its decision in this case, the California Court of Appeal held that Great American had violated § 726 by applying the proceeds which it had obtained from the receiver, resulting from the sale of some of the units, to the debt prior to exhausting the security.[4] *Great American*, 284 Cal.Rptr. at 200–01. It held that doing so was analogous to a set-off, and violated the security-first rule of § 726. However, there was no improper set-off and no violation of § 726 because all of the pro-

ceeds applied by Great American were a part of the security for the debt. The Court of Appeal purported to distinguish between sales proceeds and rent. *Great American*, 284 Cal.Rptr. at 200. However, the record of this case is clear that both the sales proceeds and the rents were security for the debt.

■ The California Court of Appeal also held that directing the sale of the condominiums was beyond the authority of the Superior Court, and beyond the authority of the receiver, because Great American's complaint only prayed for enforcement of the "rents, issues, and profits" clause. *Great American*, 284 Cal.Rptr. at 199. However, the complaint also asked for the "appointment of a receiver to take possession of the property, to conserve and manage it." Bayside consented to the appointment of the receiver at a time when sales were already in escrow and subject to the release agreement. Since the condominiums were financed and built to be sold, and were in escrow, the appointment of a receiver reasonably included the completion of the sale of the units by the receiver. The court order appointing the receiver gave the receiver general control over the property, and specifically ordered the receiver to "close any escrows that are pending on the sales of any of the units of the subject real property and/or pay any senior obligations as they come due." Moreover, each sale was subsequently authorized by the Superior Court.

In finding that the Superior Court was without authority to authorize these sales, the Court of Appeal purported to answer a question of first impression. *Great American*, 284 Cal.Rptr. at 199. However, an earlier California appellate decision held that a receiver's powers are controlled by "statute, by the order appointing him, and by the court's subsequent orders." *Cal–American Income Property Fund VII v. Brown Development Corp.*, 138 Cal.App.3d 268, 187 Cal. Rptr. 703, 706 (1982).

---

**4.** The court did not find that the filing of this action and the Superior Court's appointment of a receiver constituted an "action" in violation of § 726; the appointment of a receiver is not an action to *collect the debt,* but merely an action to protect and preserve the lender's security. *Great American,* 284 Cal.Rptr. at 200.

The Superior Court powers were not specifically limited to the prayer for relief in the complaint. The Superior Court did not exceed its authority in ordering the receiver to close the remaining escrows for the sale of the condominiums.

■ The California Court of Appeal further held that accepting and applying the proceeds from the sale of the model furniture violated the security-first principle. *Great American*, 284 Cal.Rptr. at 201. The model furniture was also collateral for the debt under a supplemental security agreement. When a single debt is secured by both personal property and real property, and the creditor brings a judicial foreclosure action against the personal property only, § 726 can prohibit a later foreclosure on the real property. *Walker*, 111 Cal.Rptr. at 905, 518 P.2d at 337.

California Uniform Commercial Code § 9501 allows a creditor having security interests in both real and personal property to proceed against them in either order. Section 726 specifically does not apply to proceedings against personal property unless a monetary judgment on the debt is sought. California Uniform Commercial Code, § 9501(4)(a), (b), (c)(ii).

Thus, receiving the proceeds from the furniture sale did not violate either *Walker* or the security-first principle. The furniture was part of the security, and the receiver's action did not allow Great American to obtain a judgment on the underlying debt without first taking the rest of the security—the real property. Therefore, Great American did not lose its security interest by accepting the proceeds from the furniture sales.

### VIII.

Great American is entitled to the all money realized from sales of the units, even if that money is not "rents, issues, and profits." This is because Great American held the security of the real estate itself. The proceeds of sale and the rent were part of the collateral to which Great American was entitled.

Bayside's only argument in opposition is that Great American did not pray for the additional funds in its complaint. However, on summary judgment the Superior Court properly decided the rights of all creditors to the monies held by the receiver. As Great American was the senior lien holder, and the debt to it had not been paid, it was entitled to all of the proceeds held by the receiver.

### IX.

It is therefore ORDERED that:

1. The August 6, 1991 decision of the California Court of Appeal is VACATED.

2. The judgment of the California Superior Court granting summary judgment to Great American is REINSTATED.