**RESOLUTION TRUST CORPORATION,**
as Conservator for Great American First
Savings Bank, Plaintiff–Appellee,

v.

**BAYSIDE DEVELOPERS,**
Defendant–Appellant.

No. 93–15451.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1994.

Decided Dec. 13, 1994.

As Amended Jan. 20, 1995.

Sandra Naisbitt Rowell, Woodside, CA, for defendant-appellant Bayside Developers.

George A. Furst, Hughes Hubbard & Reed, Los Angeles, CA, Dennis S. Klein, Kevin M. Crotty, Hughes Hubbard & Reed, Washington, DC, Michael P. Condon, Resolution Trust Corporation, Washington, DC, for plaintiff-appellee Resolution Trust Corp.

Before: FARRIS, BEEZER, Circuit Judges and MUECKE *, District Judge.

MUECKE, Senior District Judge:

This case primarily concerns the authority of the Resolution Trust Corporation (RTC) to remove an action from a state court of appeals after its appointment as conservator for a party in the state court action. Bayside alleges that the RTC lacks authority to remove an action from a state court of appeals. Thus, Bayside alleges the district court lacked subject matter jurisdiction over this action.

## BACKGROUND

The extensive factual and procedural background of this case is set forth in the district court opinion. *RTC v. Bayside Developers*, 817 F.Supp. 822, 823–24 (N.D.Cal.1993).

## DISCUSSION

### I. Removal jurisdiction

Removal of a case from state to federal court is an exercise of federal subject matter jurisdiction which is reviewed de novo. *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992).

### A. Retroactivity of the December 1991 amendment to 12 U.S.C.A. § 1441a(*l*)(3)

Appellant Bayside first argues that there is no federal subject matter jurisdiction in this action because the RTC was not formally substituted as a party in place of its predecessor bank in the state court action prior to removal and that the district erred in applying the amended removal statute which provides that the RTC shall be deemed substituted in any action upon the filing of a copy of its appointment order. The RTC removed this action to federal district court on October 7, 1991. While this case was pending in district court, in December of 1991, Congress amended 12 U.S.C.A. § 1441a(*l*)(3). 12 U.S.C. § 1441a(*l*) is part of the Financial Institutions Reform, Recovery and Enforcement Act [FIRREA] and provides that any action in which the RTC is a party, either originally or substituted for an insolvent institution, is a federal question action over which the federal district courts have original jurisdiction. 12 U.S.C.A. § 1441a(*l*) (West Supp.1994). Relevant to this action, the December 1991 amendment added subsection B which clarifies that the RTC need not be formally substituted into a state court action to remove that action to federal court.[1] The amendment became effective on February 1, 1992. The District Court issued its decision on February 9, 1993 and properly found that the amended provi-

---

* The Honorable C.A. Muecke, United States District Judge for the District of Arizona, sitting by designation.

1. The new provision at issue in this case states:
 **(B) Substitution**
 The Corporation shall be deemed substituted in any action, suit, or proceeding for a party upon the filing of a copy of the order appointing the Corporation as conservator or receiver for that party or the filing of such other pleading informing the court that the Corporation has been appointed conservator or receiver for such party.
 12 U.S.C.A. § 1441a(*l*)(3)(B) (West Supp.1994).

sion applied to this action. *RTC v. Bayside Developers,* 817 F.Supp. at 825, n. 2.

To the extent that this amendment is a change in the law,[2] it is a procedural change in a jurisdictional statute and in both jurisdictional and procedural changes the Supreme Court has clarified that the district court should apply the law in effect at the time it renders the decision. *Landgraf v. USI Film Products,* —— U.S. ——, —— ——, 114 S.Ct. 1483, 1501–02, 128 L.Ed.2d 229 (1994). Thus, the district court did not err in applying the amended FIRREA removal provision to this action when it issued its opinion.

The Supreme Court recently clarified the standard for retroactivity of statutes in *Landgraf.* Prior to *Landgraf,* the Supreme Court acknowledged that the standard for interpretation of the possible retroactive effect of statutes was unclear. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). In *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court stated that because retroactivity is not favored in the law, Congressional enactments will not be construed to have retroactive effect "unless their language requires this result." *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471. However, in an earlier opinion, the Court applied the general rule that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The Supreme Court acknowledged, but did not resolve, the inconsistencies in these standards in the *Kaiser Aluminum* case finding that the Court need not reconcile the cases since under either view the clear intent of Congress governs. *Kaiser Aluminum,* 494 U.S. at 837, 110 S.Ct. at 1577.

■ Bayside argues that the intent of Congress is clear because the savings provision of the amendment preserves the validity of any right, duty or obligation which arises under the amendment and which existed before its effective date of February 1, 1992. However, this argument is without merit because the amendment in question in this case concerns procedure regarding removal, whereas the savings clause applies only to substantive "rights, duties, or obligations." *See* Resolution Trust Corporation Refinancing, Restructuring, and Improvement Act of 1991, Pub.L. No. 102–233 § 317, 105 stat. 1761 (1991).

Because the intent of Congress is not clear, this court must apply the standards clarified by the Supreme Court in *Landgraf.* Specifically relevant to this action, the Supreme Court states in *Landgraf* that it has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1501. The Supreme Court explained that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Id.* "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Id.* The amendment in this case clarifies when the RTC is deemed substituted for purposes of removal jurisdiction. Therefore, the district court properly applied the amended statute to this action.

Moreover, "changes in procedural rules may often be applied in suits arising before their enactment without raising concerns

2. Arguably, the amendment is not even a change in the law or a new rule. Prior to the amendment, courts had found that the RTC, as a successor in interest and like its predecessors the FDIC and FSLIC, need not be formally substituted to remove an action to federal district court. *Bank of Oklahoma v. Islands Marina,* 918 F.2d 1476, 1479 (10th Cir.1990) (FSLIC); *Henry v. Independent Am. Sav. Ass'n,* 857 F.2d 995, 998 (5th Cir.1988) (FSLIC); *Structural Sys., Inc. v. Sulfaro,* 687 F.Supp. 22, 23 (D.Mass.1988) (FDIC); *Towns Real Estate & Appraisal Serv., Inc. v. RTC,* 753 F.Supp. 914 (N.D.Ala.1991) (RTC); *cf. McCarthy W. Constructors v. Phoenix Resort Corp.,* 951 F.2d 1137 (9th Cir.1991) (RTC must be formally substituted if it is not a successor in interest to a party in the action).

about retroactivity." *Id.* "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.* In this case, the relevant change in the statute, consistent with earlier court decisions, merely clarified that the RTC is substituted into an action by filing a pleading that informs the court that it has been appointed conservator or receiver for the party. 12 U.S.C.A. § 1441a(1)(3)(B) (West Supp.1994). This change is procedural as it clarifies when the RTC is deemed substituted. Therefore, the district court properly applied the amended version of the statute.

### B. Authority of the RTC to remove an action from a state court of appeals to federal district court

 Bayside argues that the FIRREA statute does not allow removal from a state appellate court. However, the plain language in FIRREA authorizes removal from state appellate courts as long as the state court appellate proceedings have not been exhausted. In statutory interpretation, courts must adhere to the plain language of a statute unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). Therefore, this court must first look to the plain language of 12 U.S.C. § 1441a. The plain language of 12 U.S.C.A. § 1441a(*l*)(3)(A) provides that the RTC "may remove any action, suit or proceeding from a State court to the United States district court...." 12 U.S.C.A. § 1441a(*l*)(3)(A). Nothing in the language of the RTC removal statute limits the stage at which the RTC may remove. *Lester v. RTC,* 994 F.2d 1247, 1252 (7th Cir.1993); *In re. 5300 Memorial Investors Ltd.,* 973 F.2d 1160, 1162 (5th Cir. 1992); *In re Meyerland,* 960 F.2d 512, 516 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993). Rather, § 1441a(*l*)(3) "gives the RTC greater removal authority than that available to others." *Hellon & Assocs., Inc. v. Phoenix Resort Corp.,* 958 F.2d 295, 299 (9th Cir.1992).[3] The RTC is only bound by final unappealable judgments entered before its appointment under 12 U.S.C.A. § 1441a(b)(4)(A) (West Supp.1994) and 12 U.S.C.A. § 1821(d)(13)(A) (1989).[4]

The First, Third, Fourth, Fifth, Seventh, Eighth and Eleventh Circuits agree that the RTC or FDIC may remove a state court

3. As the RTC points out, other provisions of FIRREA give the RTC procedural advantage in federal court including: (1) allowing the RTC to assert its special defenses for the first time on appeal; *Meyerland,* 960 F.2d at 519; *Union Fed. Bank v. Minyard,* 919 F.2d 335, 336 (5th Cir. 1990); (2) allowing the RTC to appeal remand orders under 12 U.S.C.A. § 1441a(*l*)(3) even though the general removal statute, 28 U.S.C.A. § 1447(d), provides that such orders are not appealable; AND (3) allowing the RTC to remove any case in which it is a party whereas the general removal statute, 28 U.S.C.A. § 1441, provides that only defendants can remove. 12 U.S.C.A. § 1441 (1994). All of these provisions establish that Congress intended the federal courts to have greater removal authority in cases in which the RTC was a party. This supports the conclusion that the RTC can remove state appellate proceedings.

4. 12 U.S.C.A. § 1441a(b)(4)(A) provides that the RTC has the same powers as the FDIC to carry out its duties under certain provisions of the statute:

> **(4) Conservatorship, receivership, and assistance powers**

> **(A) In general**
> Except as provided in paragraph (5) and in addition to any other provision of this section, the Corporation shall have the same powers and rights to carry out its duties with respect to institutions described in paragraph (3)(A) as the Federal Deposit Insurance Corporation has under sections 11, 12, and 13 of the Federal Deposit Insurance Act [12 U.S.C.A. §§ 1821, 1822, and 1823] with respect to insured depository institutions (as defined in section 3 of the Federal Deposit Insurance Act) [12 U.S.C.A. § 18113]).

12 U.S.C.A. § 1441a(b)(4)(A) (West Supp.1994). 12 U.S.C.A. § 1821(d)(13)(A) provides that the FDIC must abide by final unappealable judgments rendered before its appointment:

> **(13) Additional rights and duties**
> **(A) Prior final adjudication**
> The Corporation [FDIC] shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.

12 U.S.C.A. § 1821(d)(13)(A) (1989). Therefore, the RTC is bound by a final unappealable judgment entered before its appointment.

action after the state trial court has entered judgment but before the highest state court has entered final judgment. *RTC v. Allen,* 16 F.3d 568, 572 n. 4 (4th Cir.1994) (after trial court judgment while appeal was pending); *Sweeney v. RTC,* 16 F.3d 1, 6 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994) (before judgment was entered by the trial court); *RTC v. Nernberg,* 3 F.3d 62, 66–67 (3d Cir.1993) (after the appellate briefs were filed but before the appellate court reached the appeal); *Lester,* 994 F.2d at 1253–54 (after trial court judgment while post-trial motions were pending); *In re 5300 Memorial Investors, Ltd.,* 973 F.2d at 1162 (after the state court of appeals' decision and while the case was on appeal to Texas' highest court); *Ward v. RTC,* 972 F.2d 196, 198 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993) (after state court judgment, while the case was on appeal); *In re Meyerland Co.,* 960 F.2d at 517 (after state court judgment, while the case was on appeal); *Jackson v. American Sav. Mortg. Corp.,* 924 F.2d 195, 198 (11th Cir.1991) (after the trial court judgment based on a grant of summary judgment and during the appeal to the Alabama Supreme Court). The significant common factor in these cases allowing removal from a state appellate court is that the state court appellate proceedings have not yet been exhausted. *Meyerland,* 960 F.2d at 517; *In re. 5300 Memorial Investors, Ltd.,* 973 F.2d at 1162. In this case, as discussed more fully below, the California Court of Appeal's decision was not a final nonappealable order. Thus, the appellate proceedings had not yet been exhausted and removal was appropriate from the California Court of Appeal to the federal district court.[5]

## C. Authority of the district court after removal of a case from a state court of appeals

Having determined that removal of a case from the state court of appeals is allowed

under FIRREA, the court must next consider the extent of the district court's authority over the case once it has been removed to the district court. In this case, the district court followed the procedure suggested by the Eleventh Circuit in *Jackson. Bayside,* 817 F.Supp. at 827. There, the Eleventh Circuit held that a state court judgment in a case removed to federal court does not foreclose subsequent proceedings in the case in federal court and that a federal district court may dissolve or modify injunctions, orders and all other proceedings which have taken place in state court prior to removal. *Jackson,* 924 F.2d at 198. The Eleventh Circuit suggested the following procedure:

> In accordance with our role and the role of the district court, when a case removed to a federal court has in it at the time of removal an order or judgment of a state trial judge which had it been entered by a district judge, would be appealable to this court, it shall be incumbent on the party seeking an appeal first to move that the district judge modify or vacate the order or judgment. Should the district judge refuse to modify or vacate, then the fiction that the state court judge's acts were the acts of the district judge will be converted into reality. After the district judge enters an order refusing to modify or vacate or enters a new order or judgment, a party may appeal to this court.

*Jackson,* 924 F.2d at 199.

In contrast, the Third Circuit in *Nernberg* suggested the following procedure:

> In all cases removed to the district court after judgment has been entered by a state court, the parties may, within thirty days of the date the case is docketed in the district court, file motions to alter, modify or open the judgment. After briefing or argument as it deems advisable, the dis-

---

**5.** In arguing that the federal district court had no appellate jurisdiction, Bayside relies on the *Rooker/Feldman* line of cases which hold that federal district courts lack jurisdiction to review final state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68

L.Ed. 362 (1923). However, these cases may be distinguished from this case because they addressed final state court judgments defined as "rendered by the highest court of a state in which a decision could be had." 28 U.S.C.A. 1257(a); *Meyerland,* 960 F.2d at 516. The California Court of Appeal decision was not final and was not a decision of the highest state court.

trict court should enter an order granting or denying such relief.

If the motion is denied or the parties failed to file motions within the thirty-day period, the district court should enter an order adopting the state court judgment as its own. Parties then desiring to appeal shall observe the appropriate federal rules of procedure as applicable to a judgment of the district court. To the extent feasible and with necessary modifications, briefs prepared for the state appellate court may be used in the Court of Appeals.

\* \* \* \* \* \*

We emphasize that motions directed to the district court shall not require it to act as an appellate court. Rather, the motions that we envision are those in the nature of proceedings under Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or those seeking to reopen to allow Resolution Trust to present issues not previously raised in the state litigation.

*Nernberg,* 3 F.3d at 68–9.

■ After reviewing the procedures adopted by the Third and Eleventh Circuits, the Fourth Circuit adopted the following "hybrid" procedure:

[I]mmediately after removal the district court would adopt the state court judgment as its own. After this adoption, the judgment would be treated the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies. They may file motions pursuant to the applicable Rules of Civil Procedure, or file a timely notice of appeal to the federal appeals court. This approach permits, but does not require, the parties to file post-judgment motions, and it does not create a special procedural time frame for post-judgment motions in cases removed by RTC. It also allows the district court to consider any new federal questions injected into the case by the addition of RTC, and require whatever briefing, argument or hearing it deems necessary to resolve these questions and prepare an adequate record for review on appeal. This hybrid procedure also assures that the appeal is based on a judgment actually

entered by the district court, and thereby precludes this court from assuming the role of a state appellate court.

*Allen,* 16 F.3d at 573.

We conclude that the "hybrid" procedure adopted in *Allen* is the best statement of procedure and should be followed in this circuit.

■ In this case, the district court determined that it sits as if it were reviewing the decision of the California Court of Appeal, addressed the RTC's motion for new trial on the merits, vacated the Court of Appeal's decision and reinstated the decision of the superior court. *Bayside,* 817 F.Supp. at 825. This procedure is consistent with and would be acceptable under the procedure adopted by this court. Thus, the district court did not err procedurally in taking the case as it found it, considering the alternative Rule 59 or 60 motion, reversing the court of appeal's decision and reinstating the trial court's decision.

### D. Status of the state court of appeals case

■ Bayside argues the district court erred in finding that the California Court of Appeal's decision was not final when the action was removed to federal court. However, Bayside's argument is without merit. After removal, 28 U.S.C. § 1446(d) prohibits any proceedings in the state court unless and until the case is remanded:

(d) Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and **the State court shall proceed no further unless and until the case is remanded.**

28 U.S.C.A. § 1446(d) (1994) (emphasis added).

Thus, the clear language of the general removal statute provides that the state court loses jurisdiction upon the filing of the petition for removal. *Ward,* 972 F.2d at 198; *Sweeney,* 16 F.3d at 4.

In this case, the clear language of the California Appellate Court's order provided that the decision would not become final until at least October 21, 1991.[6] The RTC removed the action on October 7, 1991, before the California Court of Appeals' decision was final. On the date that the RTC filed the notice of removal, the state court lost jurisdiction over the action pursuant to 28 U.S.C.A. § 1446(d). Therefore, the district court properly concluded that the state appellate court opinion was not final at the time of removal.

Bayside cites numerous cases that define original jurisdiction by distinguishing it from appellate jurisdiction and argues that the intent of Congress in using the phrase "original jurisdiction" was to limit jurisdiction in § 1441a. Bayside's argument is without merit because the jurisdiction exercised by the district court on removal is "original" jurisdiction, without regard to the status of the proceedings in state court prior to removal. As the *Meyerland* court stated:

> [T]he modern view of removal is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court.

*Meyerland*, 960 F.2d at 516 n. 6; *See also Jackson*, 924 F.2d at 198 ("After removal, state court proceedings are treated as those of the district court and the district court naturally is able to reexamine its own proceedings."). Moreover, such restrictive interpretation would be in direct contrast to the clear intent of Congress to ensure that all cases involving the RTC be heard and decided by a federal court. *See Hellon*, 958 F.2d

at 298; *RTC v. Lightfoot*, 938 F.2d 65, 67 (7th Cir.1991); *Ward*, 888 F.2d at 59. Therefore, the grant of "original jurisdiction" in § 1441a(*l*)(1) is not a limitation on the federal district courts' authority.

### E. Timeliness of removal

Bayside argues that the RTC failed to file a timely petition for removal because it was required to remove within 90 days of the date that it was appointed receiver. However, Bayside cannot raise this procedural objection as it failed to raise it within the time period allowed in 28 U.S.C. § 1447. Motions for remand for procedural defects must be filed no later than 30 days after the notice of removal. 28 U.S.C.A. § 1447(c) (1994). The RTC filed its notice of removal on October 7, 1991. The thirty day period for remand motions lapsed on November 9, 1991 and Bayside did not move to remand until November 12, 1991, three days after the deadline. On December 10, 1991, prior to the transfer of this case to the Northern District of California, the District Court for the District of Columbia denied Bayside's motion to remand as untimely. Thus, Bayside cannot raise the claim at this time.[7]

### F. Separate and independent claim rule

Bayside argues, citing *Barrow v. Hunton*, 99 U.S. 80, 25 L.Ed. 407 (1879), that the RTC sought to only remove the California Court of Appeal action, not the trial court action, which was not a removable separate and independent claim. In *Barrow*, the Supreme Court held that a federal court cannot acquire removal jurisdiction over a state court action that seeks to set aside a prior

---

6. The California Appellate Court order granting the RTC's motion for stay provided:
 Any petition for rehearing must be served and filed in this court on or before October 7, 1991. The decision of the court, filed August 6, 1991, will otherwise become final as to this court on October 21, 1991.

7. Moreover, this argument is without merit as the amended statute clarified that the time limit runs from the date the RTC is substituted and that substitution occurs "upon the filing of a copy of the order appointing the Corporation as conservator or receiver for that party or the filing of such other pleading informing the court that the Corporation has been appointed conservator

or receiver for such party." 12 U.S.C.A. § 1441a(*l*)(3) (West Supp.1994). On August 19, 1991, ten days after its appointment as conservator of the Bank, the RTC petitioned the California Court of Appeal for a 45-day stay of the proceeding, expressly advising the Court of Appeal that it had been appointed conservator of the Bank. Therefore, pursuant to 12 U.S.C.A. § 1441a(*l*)(3)(B), as amended, the RTC was substituted as a party to the action on August 19, 1991. The RTC removed the action on October 7, 1991, well within the 90-day time limit under the amended statute. 12 U.S.C.A. § 1441a(*l*)(3)(A) (West Supp.1994).

state court judgment, where the second suit "is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuance of it." *Barrow*, 99 U.S. at 82. Bayside argues in essence that an appeal is a "supplementary proceeding" insufficiently distinct from the lower court proceedings to permit removal. However, Bayside's argument is materially flawed. An appeal is not a "supplementary proceeding." It is a continuation of the same action. Modern case law establishes that the *Barrow* rule applies only when an action in federal court seeks to nullify or to enforce the judgment of a *prior* state court suit. *Beighley v. FDIC*, 868 F.2d 776, 781 (5th Cir.1989); *MacKay v. Pfeil*, 827 F.2d 540 (9th Cir.1987). In this case, the state court action that the RTC removed "does not follow any other state court proceeding" and is clearly an "independent action" within the meaning of *Barrow*. *Beighley*, 868 F.2d at 781. Therefore, *Barrow* does not apply to bar removal of this action. *Beighley*, 868 F.2d at 781.

In addition, to the extent the *Barrow* court expressed concern about federal courts acting as courts of appeal to actions in state court, the opinion was based on the notion that removal is like an appeal because the proceeding did not commence in federal court. However, the modern view is that removal jurisdiction is more like original jurisdiction because the case after removal is treated as if it had been commenced in federal court. *Meyerland*, 960 F.2d at 516 n. 6; *FDIC v. Taylor*, 727 F.Supp. 326, 329 (S.D.Tex.1989).

### G. Waiver of the RTC's right to remove

 Bayside argues that the RTC's petition for rehearing filed in state court on the same date as the notice of removal constituted waiver of its right to remove. However, this argument is without merit because the petition was filed solely for the defensive purpose of preserving the *status quo* pending removal. A party, generally the defendant, may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to

have the matter adjudicated there, and to abandon his or her right to a federal forum. *See Baldwin v. Perdue, Inc.*, 451 F.Supp. 373, 375–76 (E.D.Va.1978); *George v. Al-Saud*, 478 F.Supp. 773, 774 (N.D.Cal.1979). "A waiver of the right of removal must be clear and unequivocal." *Beighley*, 868 F.2d at 782. In general, "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." *Beighley*, 868 F.2d at 782. Where, as here, a party takes necessary defensive action to avoid a judgment being entered automatically against him, such action does not manifest an intent to litigate in state court, and accordingly, does not waive the right to remove. *See Ward*, 972 F.2d at 198; *Beighley*, 868 F.2d at 782.

In this case, the RTC filed a petition for rehearing in the California Court of Appeal on the same date that it filed the notice of removal. The petition specifically stated that the RTC intended to remove and had made the petition solely for the defensive purpose of preserving the *status quo* pending removal. Thus, the RTC was taking a defensive action to avoid judgment in the state court during the removal process and did not waive federal court jurisdiction. *Ward*, 972 F.2d at 198; *Beighley*, 868 F.2d at 782.

## II. Application of California law

 The district court treated the RTC's alternative Rule 59 or 60 motion as a motion for new trial. A district court's decision concerning a motion for a new trial pursuant to Federal Rule of Civil Procedure 59 is reviewed for an abuse of discretion. *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S.Ct. 2909, 2921–22, 106 L.Ed.2d 219 (1989).

### A. California Code of Civil Procedure § 726

#### 1. The "one form of action" rule

 Bayside argues, citing *Walker v. Community Bank*, 10 Cal.3d 729, 733, 518 P.2d 329, 331, 111 Cal.Rptr. 897, 899 (1974), that the bank violated the "one form of action" rule of § 726 of the California Code of Civil Procedure by filing an action for specif-

ic performance rather than a judicial foreclosure. Section 726(a) provides in relevant part:

> There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter ...

West's Ann.C.C.P. § 726(a) (West Supp. 1994). Under § 726, a creditor can bring only one lawsuit to enforce its security interest and collect its debt. This is referred to as the "one action rule." In *Walker*, the California Supreme Court stated that a creditor may violate § 726 and lose its ability to foreclose nonjudicially by obtaining a personal money judgment on the underlying debt *prior* to a foreclosure:

> [S]ince under section 726 "there can be but one form of action for the recovery of any debt secured by a mortgage or deed of trust on real property," where the creditor sues on the obligation and seeks a personal money judgment against the debtor without seeking therein foreclosure of such mortgage or deed of trust, he makes an election of remedies, electing the single remedy of a personal action, and thereby waives his right to foreclose on the security or to sell the security under a power of sale.

*Walker*, 10 Cal.3d at 733, 518 P.2d at 331, 111 Cal.Rptr. at 899. The California Supreme Court further stated that § 726 may be applied two ways:

> (1) "[i]f the debtor successfully raises the section as an affirmative defense, the creditor will be forced to exhaust the security before he may obtain a money judgment against the debtor for any deficiency" OR
>
> (2) "[i]f the debtor does not raise the section as an affirmative defense, he may still invoke it as a sanction against creditor on the basis that the latter by not foreclosing on the security in the action brought to enforce the debt, has made an election of remedies and waived the security."

*Walker*, 10 Cal.3d at 734, 518 P.2d at 332, 111 Cal.Rptr. at 900.

In this case, the district court correctly found that the Bank obtained no prior personal money judgment or any judgment that would have allowed it to execute against Bayside's general assets. The Bank filed only one action. Thus, the district court did not abuse its discretion in finding that the Bank did not violate the one action rule of § 726 and *Walker*.

**2. The "security first" rule**

Bayside argues, citing *Security Pacific National Bank v. Wozab*, 51 Cal.3d 991, 800 P.2d 557, 275 Cal.Rptr. 201, (1990), that the Bank violated the "security first" rule of § 726 of the California Code of Civil Procedure by causing[8] the sale of the furniture and nine developed parcels as "rents

---

**8.** Bayside asserts that the Bank "caused" the sale of the townhouses. First, although the Bank initiated the appointment of the receiver, upon its appointment, the receiver was not subject to the direction of the Bank. Rather, the receiver was an agent of the court and the property was "under the control and continuous supervision of the court." *Lesser & Son v. Seymour*, 35 Cal.2d 494, 499, 218 P.2d 536, 539 (1950). Accordingly, it was the order of appointment and the subsequent orders of the trial court, not the Bank, that directed the receiver's actions. *Cal–American Income Property Fund VII v. Brown Dev. Corp.*, 138 Cal.App.3d 268, 273, 187 Cal. Rptr. 703, 706 (1982).

Moreover, the court's order required the receiver to adopt the pending sales agreements and escrow instructions and to consummate those sales *in accordance with the terms to which Bayside had agreed pre-receivership*. The sales agreements and escrow instructions required payment to the Bank of the contractually agreed upon release prices. In light of Bayside's existing default the Bank was not legally obligated under its loan documents to allow any of the townhouses to be sold free and clear of its lien in return for payment of the release prices. Had the Bank been enforcing the provisions of its loan documents, it could have required that the entire sales proceeds be paid to it, since the Bank held security interests in the sales agreements themselves and in any proceeds from the properties independent of the deed of trust. The payment of just the release prices to the Bank was called for by the sales agreements and escrow instructions agreed to by Bayside and the buyers. The payment of those release prices directly to the Bank by the escrow, therefore, was not any action by the Bank to recover on a debt. Rather, the receiver and the escrow agent acted according to Bayside's own contracts, not for the Bank under its loan documents.

issues and profits" before the sale of the primary security, the real property.

 A creditor may violate the "security-first" rule of § 726 by collecting from the debtor's non-collateral general assets *prior* to looking to its collateral. *Wozab,* 51 Cal.3d at 999–1000, 800 P.2d at 561–62, 275 Cal.Rptr. at 205–06.[9] In this case, the Bank did not get paid with non-collateral before being paid with collateral because the townhouses that were sold, the sale proceeds and the model home furniture were all part of the Bank's collateral.[10] Thus, the district court did not abuse its discretion in finding that there was no violation of the "security first" rule.

### B. Authority of the court appointed receiver

Bayside argues that the district court erred in holding that the superior court powers were not specifically limited to the prayer for relief in the complaint and the court did not exceed its authority in ordering the receiver to close the remaining escrows for the sale of the townhouses. However, the district court did not abuse its discretion in holding that the sale of the townhouses was within the authority of the court appointed receiver.

 Under California law, the power of the court to appoint a receiver, over rents issues and profits or generally, is derived from California Code of Civil Procedure § 564 (West Supp.1994). Under section 564(b)(8), receivers may be appointed in "cases where receivers have heretofore been appointed by the usages of courts of equity." West's Ann.C.C.P. § 564 (West supp. 1994). Such cases encompass those where the trustor under a deed of trust has contractually

consented to the appointment of a receiver upon default. *Barclays Bank of California v. Superior Court,* 69 Cal.App.3d 593, 599–600, 137 Cal.Rptr. 743, 746–47 (1977). In this case, the complaint requested "appointment of a receiver to take possession of the property to conserve and manage it" and Bayside did not object to the appointment of a receiver. Thus, the court had authority to appoint the receiver.

Once the power to appoint exists and the receiver is in fact appointed, his "functions and powers are controlled by statute, by the order appointing him, and by the court's subsequent orders." *Cal–American Income Property Fund VII v. Brown Dev. Corp.,* 138 Cal.App.3d 268, 187 Cal.Rptr. 703 (1982). "Where the receiver's powers and duties are not directly prescribed by statute, they are dependent upon the court's order of appointment," *Nulaid Farmers Assoc. v. LaTorre,* 252 Cal.App.2d 788, 791, 60 Cal.Rptr. 821, 823 (1967), "although they may be expanded or contracted by subsequent court order." *Cal–American Income Property Fund VII,* 138 Cal.App.3d at 273, 187 Cal.Rptr. at 706.

 The trial court's order appointing the receiver authorized it to "collect all rents from the subject property, manage said real property and from the rent proceeds protect, conserve and maintain said real property." To carry out this mandate, the order of appointment also specifically empowered receiver to "perform all acts to protect conserve and maintain said real property in the same manner as would the owner protect the property's best interest." This order was consistent with the Bank's prayer for a receiver to conserve and manage the property and created more than a receivership limited

---

**9.** For example, in *Wozab,* the bank violated the rule by first taking funds from a depositor's demand account before collecting on the security. *Wozab,* 51 Cal.3d at 999, 800 P.2d at 561–62, 275 Cal.Rptr. at 206. The California Supreme Court found in *Wozab* that, despite violation of the rule, the bank was not precluded from filing a suit to collect the remainder of the debt because the debtors accepted the bank's reconveyance of the deed of trust. *Wozab,* 51 Cal.3d at 1103–04, 800 P.2d at 564–65, 275 Cal.Rptr. at 208–09.

**10.** The Court of Appeal apparently believed that the escrow disbursement of sales proceeds to the

Bank transformed the Bank's judicial action into an action to collect part of its security, which then barred the Bank from foreclosing non-judicially on the remainder of its security. However, the disbursement of moneys to the Bank from the sales proceeds was in compliance with the seller's [Bayside's] instructions in the escrows that were already pending at the time of the receiver's appointment. Thus, the Bank would have received these moneys, even if a receiver had not been appointed.

to the "collection of rents, issues and profits." The broader scope of the receiver's authority to conserve, manage and protect as an owner necessarily encompassed the power to sell, to carry out the pending sales agreements and close the pending escrows because the goal of Bayside's condominium project was development and sale of the townhouses. Since the Bank's security encompassed the land, the townhouses, the furniture, the sale agreements and any proceeds from the real property, the monies held by the receiver at the time of the summary judgment, including the proceeds from the sales agreements and furniture and the real property, were the Bank's additional collateral.

 Bayside appears to argue that the Bank violated § 726 by collecting on its "additional" collateral before collecting on its "primary security." However, the escrow's disbursement of part of the proceeds from the sale of the townhouses was not the result of an action to collect on its security by the Bank. Thus, even assuming California law requires a creditor to look at its primary security before its additional security, no such rule has been violated. In addition, California law imposes no such requirement. Rather, a creditor is obliged under § 726 to confine itself to *one* action to recover its debt. No violation of § 726 occurred here. The Bank had the right to realize on this additional collateral, whether or not it was in the form of rents, issues or profits, following the nonjudicial foreclosure sale at which the amount bid was less than what the Bank was owed. *Hatch v. Security–First National Bank,* 19 Cal.2d 254, 260, 120 P.2d 869, 873 (1942); *Mortgage Guarantee Co. v. Sampsell,* 51 Cal.App.2d 180, 185–86, 124 P.2d 353, 355–56 (1942). The right of a secured creditor to realize on its additional collateral following a nonjudicial foreclosure sale of its real property security is not impaired by the anti-deficiency provisions of Cal.Civ.Proc.Code §§ 580a, 580b or 580d (West Supp.1993), or by the one form of action defense or sanction of Cal.Civ.Proc.Code § 726 (West Supp. 1993). *Mortgage Guarantee Co.,* 51 Cal. App.2d at 186, 124 P.2d at 356. A nonjudicial foreclosure sale is *not* an action within the meaning of section 726 that bars *subsequent* recourse to additional collateral.

*Mortgage Guarantee Co.,* 51 Cal.App.2d at 186, 124 P.2d at 356. There is no dispute that the outstanding debt owed to the Bank at the time of its nonjudicial foreclosure sale was in excess of $4,500,000. As the district court correctly held, the Bank was entitled to the remaining monies still held by the receiver following the Bank's nonjudicial foreclosure sale since those monies were additional collateral to which the Bank could look for payment of its outstanding debt. *Hatch,* 19 Cal.2d at 260, 120 P.2d at 873; *Mortgage Guarantee Co.,* 51 Cal.App.2d at 185–86, 124 P.2d at 355–56.

### C. Rents, Issues and Profits

 Bayside argues that the district court erred in failing to make a finding on the issue of whether or not the funds collected in the trial court action were "rents, issues and profits." According to Bayside, the Bank's entitlement to the remaining monies held by the receiver at the time of the summary judgment turns on whether those monies were rents, issues and profits. However, the district court did not abuse its discretion. It was unnecessary for the district court to make that determination because it found that the receiver obtained his authority from the court order and acted within that authority. The order appointing the receiver, without objection from Bayside, specifically empowered the receiver to "close any escrows that are pending on the sales of any of the units." Thus, this case did not pose what the California Court of Appeal characterized as the "issue not reached" in *Turner v. Superior Court,* 72 Cal.App.3d 804, 140 Cal.Rptr. 475 (1977) of whether a rents, issues and profits receiver can ever be authorized to sell the security.

The receiver also obtained additional advance permission from the Court for each sale. Accordingly, the Court of Appeal's conclusion that "this case is similar to *Turner*" overlooked the breadth of the receiver's appointment in this case and the fact that the receiver sold only property that was part of the Bank's security.

Even if this case had posed the "issue not reached" in *Turner*, the district court correctly found that the court of appeal overlooked the fact that *Cal–American* did decide that issue and held that, in an appropriate case, a rents, issues and profits receiver can be authorized to sell the security. *Cal–American Income Property Fund VII*, 138 Cal.App.3d at 273–74, 187 Cal.Rptr. at 706. The appellate court in *Cal–American* held that on the narrow facts of that case the trial court had abused its discretion in confirming a sale over the objection of Cal–American. *Cal–American*, 138 Cal.App.3d at 275–76, 187 Cal.Rptr. at 707–08. However, in this case, the security was intended to be sold; was sold without objection by Bayside and was sold *pursuant to Bayside's own sales agreements and escrow instructions*. In addition, because the model furniture was part of the Bank's security, the receiver's sale of it did not raise any problem under *Turner*, in which a receiver attempted to sell property that was *not* part of the creditor's collateral. Therefore, the district court did not abuse its discretion in reversing the California Appellate Court of Appeal's decision.

AFFIRMED.