[Civ. No. 24747. Fourth Dist., Div. One. Dec. 17, 1982.]

CAL-AMERICAN INCOME PROPERTY FUND VII,
Plaintiff and Appellant, v.
BROWN DEVELOPMENT CORPORATION et al.,
Defendants and Respondents;
MICHAEL D. PURSELL, as Receiver, etc., Respondent.

COUNSEL

Fierstein & Sturman, Harvey Fierstein, Edward C. Broffman and Robert S. Mann for Plaintiff and Appellant.

Tuohey & Prasse and Michael E. Wade for Defendants and Respondents.

Rutan & Tucker, John B. Hurlbut, Jr., and Harvey M. Moore as Amici Curiae on behalf of Defendants and Respondents.

Michael D. Pursell, in pro. per., for Respondent.

OPINION

**WIENER, Acting P. J.**—During the pretrial skirmishing between plaintiff Cal-American Income Property Fund VII, a California limited partnership (Fund VII), and defendants Brown Development Corporation and Richard T. Brown (collectively Brown), the trial court authorized and confirmed the receiver's private sale of a shopping center, the subject of the litigation between the parties. Because we conclude the court abused its discretion in authorizing the sale, we reverse the order.

*Factual and Procedural Background*

The property involved in this dispute is a shopping center and office complex (the Center) in Corona, California. Brown, the builder and developer, sold the Center to Fund VII in June 1979 for $4.2 million. The sale price included Fund VII's 30-year all-inclusive $3.8 million purchase money promissory note secured by an all-inclusive trust deed wrapped around an underlying first trust deed which secured a promissory note for about $2.3 million. Typical of transactions of this nature, the parties agreed to adjust the all-inclusive note to reflect the commercial success of the Center. In order to give Brown sufficient time to complete construction and lease the premises, Fund VII agreed to a one-year leaseback. Almost immediately after signing the documents for the sale and leaseback, Fund VII claimed Brown was in default under the lease. This mild flareup was ostensibly amicably resolved and the parties signed a settlement agreement in June 1980. Within months, however, a dispute erupted and Fund VII initiated this action by filing a complaint for damages for breach of contract and for declaratory and equitable relief seeking termination of the lease, cancellation of the all-inclusive note, and reconveyance of the all-inclusive trust deed. Brown responded by filing a cross-complaint for rescission, damages for breach of contract and fraud, and to foreclose the trust deed. Both pleadings sought the appointment of a receiver for the purpose of preserving the property

pending trial. Pursuant to stipulation, the court appointed a receiver on November 18, 1980.[1]

On March 23, 1981, the receiver obtained an ex parte order authorizing him to retain an appraiser to express an opinion on the fair market value of the property and for an order shortening time to confirm the sale of the property for $4.5 million. The receiver's petition included a letter from a law firm retained by a real estate broker representing an unidentified purchaser offering to buy the property for $4.5 million net. The letter, dated March 12, 1981, was directed to Brown and provided for the following terms: $10,000 upon acceptance of the offer, $1,612,245 cash at closing, $600,000 payable interest only for five years at 12 percent per annum, and assumption of the first trust deed. The March 23 order set the hearing confirming the sale for April 2, 1981.[2]

Before the hearing, the court received the appraiser's written opinion stating on April 1, 1981, the property's fair market value was $4.3 million and Richard T. Brown's affidavit strongly urging the sale of the property pursuant to the offer. Brown declared there were insufficient funds to pay the $100,000 needed to complete the tenant improvements necessary to lease the premises, $110,000 was due subcontractors, and $53,000 representing real property taxes payable in two equal installments was due on April 10 and December 10, 1981.

Fund VII objected to the proposed action on a number of grounds: the receiver lacked the authority to sell, the alleged financial difficulties were caused

---

[1]The order appointing the receiver authorized him to bring and defend actions in his own name; to take and keep possession of the real property; to employ a management company; to receive rents; collect debts; pay just claims and debts other than debts claimed to be due Fund VII or Brown and generally to do such acts respecting the property as the court might authorize or the parties, by stipulation, could agree upon without prejudice to any further order.

[2]The March 23 order also shortened time for the filing and service of notice and the moving papers to noon on March 27, 1981, with responding papers to be filed and served by 4:30 p.m. on March 30, 1981. We are well aware the tempo in the practice of law fluctuates dramatically depending upon the exigencies of the marketplace and demands of clients. All too often lawyers are required to seek orders shortening time to deal effectively with emergency situations. But every case does not require an emergency response. Professional courtesy and basic fairness militate against the use of orders shortening time or similar techniques which create an unnecessary handicap for the lawyer representing the adverse party. Whether couched in terms of professional courtesy, the golden rule, or due process, it should not be necessary to remind lawyers cases should be decided on the merits and not on the strategy of a paper war which denies a party a reasonable time within which to respond.

Our comments here are prompted by our concern with whether it was essential for the receiver to limit Fund VII to a single weekend within which to prepare documents in order to preserve ownership of a multimillion dollar property. We cannot determine from the record when the receiver first learned of the offer and whether he created the unwarranted appearance of an emergency. Although we have concluded Fund VII's due process contention need not be addressed (see fn. 3, *post*), the procedure followed here has brought us to the brink on that issue.

by the receiver's ineffective marketing efforts and his inept administrative abilities, the offer was too low in light of an earlier appraisal placing the value of the property at about $5.3 million, and the sale was the result of collusion among Brown, the buyer, and the receiver. After hearing abbreviated oral argument from counsel,[3] the court granted the receiver's petition on April 10, 1981. Fund VII's later motion for reconsideration was denied. This appeal by Fund VII followed.[4]

*Discussion*

Fund VII first contends the court exceeded its jurisdiction in confirming the sale, claiming in light of the stipulation appointing the receiver, the receivership here is the same as a "rents and profits" receivership where the receiver's powers are limited to the express terms of the order of appointment. (See *Turner* v. *Superior Court* (1977) 72 Cal.App.3d 804, 815-816 [140 Cal.Rptr. 475]; *Morand* v. *Superior Court* (1974) 38 Cal.App.3d 347, 351 [113 Cal. Rptr. 281]; *Nulaid Farmers Assn.* v. *LaTorre* (1967) 252 Cal.App.2d 788, 793 [60 Cal.Rptr. 821].) ■ The receiver's functions and powers are controlled by statute, by the order appointing him, and by the court's subsequent orders. (*Morand* v. *Superior Court, supra,* 38 Cal.App.3d at p. 351; 2 Witkin, Cal. Procedure (2d ed. 1970) § 257, pp. 1643-1644.) Code of Civil Procedure sec-

[3] We have used "abbreviated" because the court first limited each party to 60 seconds of argument and relented to permit 5 minutes only after Fund VII strenuously objected. Recognizing the glass house in which we work, we hesitate to comment on the need and value of oral argument. Despite what some members of the bar may view as our efforts to limit argument before us, we not only recognize the benefits of argument, but our inability to preclude parties wishing to argue from doing so. (*Moles* v. *The Regents of University of California* (1982) 32 Cal.3d 867, 872 [187 Cal.Rptr. 557, 654 P.2d 740]; *People* v. *Brigham* (1979) 25 Cal.3d 283, 285-289 [157 Cal.Rptr. 905, 599 P.2d 100].) Moreover, we believe a court's duty in confirming a receiver's sale of property which is the subject of the underlying litigation, is similar to its duty in appointing a receiver when a party objects. The gravity of the court's responsibility in this regard is reflected in the process which must be followed. (See Cal. Rules of Court, rules 238, 239.) Not only is the court required to give the hearing precedence, but for good cause the court may allow the hearing to be had in whole or in part on oral testimony. Here, that good cause was established. "So serious a matter as the appointment of a receiver should not be made without a full and complete hearing unless the due administration of justice clearly requires it." (*Cohen* v. *Herbert* (1960) 186 Cal.App.2d 488, 495 [8 Cal.Rptr. 922].)

We need not decide here whether the court's ruling limiting argument impaired Fund VII's due process rights. Although we understand oral argument may not be the sine qua non for accurate judicial decisionmaking, had Fund VII been given more time to argue, counsel might have been able to shed more light on the issue and furnished more information to the court to reflect upon before ruling. Our admonition to the trial court to expand time allowed for oral argument in those complex law and motion cases where the decision has an immediate and dramatic impact upon the parties is no more than a reminder to ourselves that the quality and appearance of justice is always improved when a judge listens before he or she decides.

[4] The orders denying Fund VII's motions for reconsideration and to vacate the order appointing receiver and to terminate the receivership are not appealable. (*Title Ins. & Trust Co.* v. *Calif. etc. Co.* (1911) 159 Cal. 484, 487-488 [114 Cal.Rptr. 838]; see *Lavrischeff* v. *Blumer* (1978) 77 Cal.App.3d 406, 409 [143 Cal.Rptr. 567].) We have, however, considered those documents in resolving whether the court abused its discretion in confirming the sale.

tions 568[5] and 568.5[6] authorize the receiver to perform such acts respecting the property as the court may authorize, including the sale of real and personal property upon notice and subject to court confirmation.

■ We need not decide whether an order based upon the parties' stipulation appointing a receiver which purports to limit both the receiver's and the court's power to act beyond the scope of the original order, may restrict the court's authority because the order here did not limit the court's power to confirm a sale of the property. Although the stipulation for the appointment of receiver did not expressly refer to a sale of the property by the receiver, it did not preclude that possibility. The order authorized the receiver "generally to do such acts respecting the property as the court may authorize." In addition, as a result of the parties' apparent sensitivity to the need for flexibility to respond to changed circumstances, the order defining the duties of the receiver was made without prejudice to any further order. The court also retained jurisdiction to enable either party to apply for further orders or for modifications of the existing order. The court thus correctly decided the receiver had the power to sell subject to its confirmation. The pivotal question is whether the receiver presented sufficient facts to the court before the hearing to warrant exercise of that power.

■ Judicial confirmation of a receiver's sale rests upon the appointing court's sound discretion exercised in view of all the surrounding facts and circumstances and in the interest of fairness, justice and the rights of the respective parties. (*People* v. *Riverside University* (1973) 35 Cal.App.3d 572, 582 [111 Cal.Rptr. 68].) The proper exercise of discretion requires the court to consider all material facts and evidence and to apply legal principles essential to an informed, intelligent, and just decision. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 875 [13 Cal.Rptr. 513, 362 P.2d 337].) ■ Our view of the facts must be in the light most favorable to the order and we must refrain from exercising our judgment retrospectively. Reversal is warranted only after concluding the trial court abused its discretion by confirming a fraudulent, unfair, or oppressive sale. (*Lesser & Son* v. *Seymour* (1950) 35

[5]Code of Civil Procedure section 568 provides: "*Powers of receivers.* The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize."

[6]Code of Civil Procedure section 568.5 provides: "A receiver may, pursuant to an order of the court, sell real or personal property in his possession as such receiver, upon the notice and in the manner prescribed by law for the sale of such property under execution. The sale shall not be final until confirmed by the court. Sales made pursuant to this section shall not be subject to redemption."

Cal.2d 494, 503-504 [218 P.2d 536]; *People* v. *Riverside University, supra,* 35 Cal.App.3d at p. 582.)

 The receiver here had to establish actual, not imaginary, necessity for the sale (see *Lesser & Son* v. *Seymour, supra,* 35 Cal.2d at p. 503; *People* v. *Riverside University, supra,* 35 Cal.App.3d at pp. 580-585) and also needed to demonstrate the sale had to be consummated at that time. The evidence had to show both the property would be lost to creditors at some future time unless the court ordered the sale and the sale had to occur within a specified time to avoid such a loss.[7] Although the receiver here presented information reflecting an unpleasant situation, those facts viewed most favorably were insufficient to support an order for an immediate sale.

On the date of the hearing, the court had before it the receiver's accounting from the date of his appointment through March 13, 1981, the documents supporting the sale, and the written arguments in opposition. The receiver's accounting showed rental income of $113,400 (all numbers are rounded off) to March 9 and total pay-outs through March 11 of $97,300, leaving cash on hand of $16,100. The accounting also indicated current payables of $600 leaving $15,500 of cash remaining. The accounting was consistent with Fund VII's representation at the hearing that the property was paying for itself and there were no delinquencies on the secured notes.

The receiver's petition and supporting declaration indicated only that it was necessary for the receiver to have a new appraisal at a cost of $1,400 and funds were available to pay such expense. He never said why this sale was required. His opinion the sale was in both parties' best interests because it exceeded Fund VII's cost was relevant only to the fairness of the sale price, not to the need for the sale. Brown's declaration provides the only data supporting the need to sell the Center. Although Brown's declaration suggests a sale should be considered at some future time, it does not describe an imminent fiscal crisis warranting the drastic action of an immediate sale. No one claimed the property was in foreclosure or that any creditor had filed suit. No urgency is suggested by a $26,500 tax liability due eight months in the future. Even if there were a

---

[7]The distinction between the need for a sale and the timing of that sale is critical. A court must engage in a two-level analysis, first deciding whether a sale is required and then determining when the sale should take place. In some cases the court may decide a sale is necessary but leave time for the receiver to obtain a favorable price rather than accede to a single offer discounted to reflect the alleged emergency nature of the transaction. Naturally, a court will focus on the same factors at both analytical stages, but it will likely allocate different weights to these factors at each step. For example, evidence the property is not generating capital and could in the future suffer a substantial deficit or be subject to an adverse judgment or foreclosure might be adequate to order a sale but might not be sufficient to order an immediate sale. On the other hand, evidence the property is faced with imminent destruction or substantial devaluation could justify an immediate sale to any available purchaser.

default by failing to pay the first installment of taxes, a five-year redemption period was available. (Rev. & Tax. Code, § 4217.)

■ ■■■■ ■■ Although promptness in consummating the sale seems to have been superficially established by buyer's counsel's representation his client would not extend the time of the offer, this representation standing alone does not go to the issue of necessity for the sale where the court has no information on what efforts, if any, had been made to market the property or whether other offers from other purchasers would be forthcoming.[8] Under these circumstances it was clearly unreasonable for the court to rush to accommodate a mystery buyer whose unknown credit was thought to be sufficient to support a $600,000 unsecured interest bearing note in derogation of the ownership rights of Fund VII.[9]

The status of the litigation and the effect a sale would have on the parties are both facts and circumstances the court must consider before confirming a sale. When Fund VII and Brown filed their pleadings, preservation of the property was their primary purpose, a purpose steadfastly adhered to by Fund VII. Fund VII's tenacity stemmed from more than stubbornness. The only way Fund VII could satisfy the promises made to those investing as limited partners seeking the purported tax benefits associated with owning real property was to keep the Center. Retaining title to the property was essential to Fund VII's economic life. The heart of its lawsuit was not to obtain the cash value of the property but to continue owning it. Thus, at the time of the hearing to confirm the private sale by the receiver, the court was obligated to scrutinize the documents objectively to evaluate whether the circumstances required an immediate sale of the property with the resultant loss to Fund VII of the opportunity to litigate its rights to the property.

The sale here was manifestly unfair to Fund VII because the receiver did not present facts demonstrating the need for a sale, much less an immediate one. The court did not adequately consider the surrounding facts and circumstances in light of fairness, justice, and the rights of the parties and therefore abused its discretion in confirming the sale.

---

[8]The court cannot, in any case, be blind to tactics frequently applied by real estate purchasers. "The receiver has the affirmative duty to endeavor to realize the largest amount from the sale of the receivership property." (2 Clark, The Law and Practice of Receivers (3d ed. 1959) § 498(a), p. 812, fn. omitted.) A court confirming the sale of property should also attempt to obtain the best bargain possible under the circumstances.

[9]When the court confirmed the sale, the nature of the $600,000 note was not raised. Several months later the receiver obtained an ex parte nunc pro tunc order specifying it be unsecured. We observe the evidence presented to the court must establish a drastic situation to warrant the sale of a real estate parcel subject to two trust deeds totalling over $3.8 million with an unsecured $600,000 note executed by an unidentified purchaser.

*Disposition*

Reversed.

Work, J., and Zumwalt, J.,* concurred.

A petition for a rehearing was denied January 5, 1983, and the petition of defendants and respondents for a hearing by the Supreme Court was denied March 2, 1983.

---

*Assigned by the Chairperson of the Judicial Council.