Filed 1/18/24  Estate of Locklin CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of DOROTHY JEAN LOCKLIN, Deceased. | B322049 |
| | (Los Angeles County Super. Ct. No. BP138469) |
| ZACHARY G. JONES, as Personal Representative, etc., | |
| Petitioner and Respondent, | |
| v. | |
| FREDERICK COOLEY, | |
| Objector and Appellant; | |
| LYNN JACOBS et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Small, Judge.  Affirmed.

Decker Law, James Decker, and Griffin Schindler for Objector and Appellant Federick Cooley.

Law Office of Steven A. Simons and Steven A. Simons for Respondent Lynn Jacobs.

Cunningham, Treadwell & Bartelstone, James H. Treadwell, and G. Richard Gregory III for Respondent TUP 1537 W37ST HOUSING LLC.

No appearance for Petitioner and Respondent Zachary G. Jones.

_____

Frederick Cooley, an heir of an estate, appeals from the probate court's order confirming the sale of the estate's interest in real property.  We reject Cooley's various contentions of error and affirm the order.

## BACKGROUND

### I.    Locklin's Estate

Dorothy Jean Locklin (Locklin) died intestate in June 2010.  At that time, she owned a 50 percent interest in a residential property located at 1597 West 37th Street, Los Angeles, California 90018 (referred to hereafter as the real property).  Her brother owned the other 50 percent interest in the real property.  Locklin's interest in the real property was the only asset of her estate.

On February 4, 2013, appellant Cooley, one of Locklin's sons, was appointed the administrator of Locklin's estate.  Later in 2013, Henry Jacobs and Lynn Jacobs (a married couple) acquired Locklin's brother's 50 percent interest in the real

2

property.[1]  Locklin's estate retained the other 50 percent interest in the real property.

After around eight years as the administrator of Locklin's estate, Cooley was removed from the position.[2]  On September 3, 2021, the probate court appointed Zachary Jones, another of Locklin's sons, as the administrator of Locklin's estate.  The letters of administration granted Jones "limited authority," meaning, for example, that he required court approval of a sale of the estate's real property.

## II. Jones's Petition for Order Confirming Sale of the Real Property

Five months after his appointment as administrator of Locklin's estate, on February 8, 2022, Jones filed a Report of Sale and Petition for Order Confirming Sale of Real Property (Report and Petition)—the petition at issue in this appeal.  Jones, who was represented by counsel in his capacity as administrator of Locklin's estate, used the requisite Judicial Council forms for the Report and Petition and attachments.  Jones declared under penalty of perjury that the information in the Report and Petition

---

[1] It is not clear from the record in this appeal if there was a preexisting relationship between the Jacobses and Locklin's brother and/or Locklin's family.

[2] The appellant's appendix in this appeal does not include documents relating to Cooley's administration of Locklin's estate or his removal from the position.  As discussed more fully below, at a hearing on the petition at issue in this appeal, the probate court noted that Cooley was removed as administrator "in part because [he was not] administering the estate and moving things forward," i.e., he did not sell the real property and close the estate during the eight-year period that he was the administrator.

3

was true and correct. As explained below, the buyer agreed to purchase the entire interest in the real property (the estate's 50 percent interest and the Jacobses' 50 percent interest), but the Report and Petition describe the sale of the estate's 50 percent interest only (the portion of the sale requiring court approval).

As reflected in the Report and Petition, the appraised value of Locklin's 50 percent interest in the real property, at the time of her death in 2010, was $115,000. The "[r]eappraised value within one year before the hearing" was listed in the Report and Petition as $435,000. Jones filed the requisite Inventory and Appraisal form, on which the probate referee declared under penalty of perjury on October 15, 2021 that he appraised the estate's 50 percent interest in the real property at $435,000. An attachment to the Inventory and Appraisal form listed the appraisal of the entire interest in the real property as $870,000.

Jones checked boxes on the Report and Petition form indicating the reasons for the sale were (1) that it was necessary to pay debts and expenses of administration, and (2) that the "sale is to the advantage of the estate and in the best interest of the interested persons." The Report and Petition further indicate that "to obtain the highest and best price reasonably attainable for the property," the real property "was published with Metropolitan Newspaper, placed on the multiple listings[,] and agent had several inquiries and showed property to several interested buyers [*sic*]."

As set forth in the Report and Petition, on February 1, 2022, an entity called TUP 1597 W37ST HOUSING LLC (TUP) agreed to purchase the real property in a private sale. The purchase price of the entire interest in the real property is not listed on the form. The purchase price of the estate's 50 percent

4

interest is listed as $400,000.  TUP agreed to pay cash for the real property, which was to be sold as is, with "no repairs of any kind."

### III.  Cooley's Petition to Determine Ownership of the Real Property and Objection to Petition for Order Confirming Sale of the Real Property

On March 11, 2022, six days before the scheduled hearing on Jones's above-described petition, Cooley, as a self-represented litigant, filed a verified petition to determine ownership of the real property.  In this appeal, Cooley does not challenge any order related to his petition, but we discuss it because it provides context for his objection to the confirmation of the sale of the real property—the matter at issue in this appeal.

In his petition to determine ownership of the real property, Cooley sought a judicial declaration that the estate "is the full legal and beneficial owner" of the real property.  He claimed the Jacobses no longer owned an interest in the real property.

Cooley explained in his petition (and attached documents demonstrating) that Locklin and her brother defaulted on the property taxes in 2008, around five years before the Jacobses acquired their 50 percent interest in the real property from Locklin's brother.  Cooley alleged that in November 2014, during the time he was the administrator of Locklin's estate, and after the Jacobses acquired their interest in October 2013, the real property was the subject of a public auction by the Los Angeles County Tax Collector.  According to Cooley, the individual or entity who bid on the real property at the auction "failed to finalize the sale allowing the owners of the property an opportunity to redeem it . . . by paying all current and defaulted property taxes and other related fees."  As reflected in documents

attached to Cooley's petition, on June 4, 2015, Cooley presented a cashier's check, made payable to the Los Angeles County Tax Collector, for $26,970.43, the amount of the delinquent taxes and associated penalties, fees and costs. Cooley also paid an additional $655.33 to the Los Angeles County Tax Collector for fees associated with the transfer of the 50 percent interest in the real property from Locklin's brother to the Jacobses. The same day, the Los Angeles County Tax Collector issued a Certificate of Redemption, identifying the owners of the real property as "JACOBS, HENRY AND LYNN E AND LOCKLIN, DOROTHY DECD EST OF."

Cooley asserted in his petition that "his redemption of the property due to his full payment of the defaulted taxes, related fees and the issuance of the Certificate of Redemption is evidence of the Estate's superior title[,] and Objectors Henry Jacobs and Lynn Jacobs hold no title interest at all to the property." In resolving the present appeal, we need not evaluate this assertion (which Cooley apparently did not raise in the probate court at any time before he was removed as the administrator of Locklin's estate in 2021). We note that Jones, in his capacity as the administrator of Locklin's estate, did not dispute that the estate owned a 50 percent interest in the real property and the Jacobses owned a 50 percent interest in the real property (currently held by Lynn Jacobs as Trustee of the Jacobs Family Trust).

On March 14, 2022, Cooley, as a self-represented litigant, filed an objection to Jones's petition for an order confirming the sale of the real property. Therein, he included allegations about the redemption of the real property, as set forth in his petition to determine ownership of the real property and summarized above. He reiterated his position that "payment to redeem the property

6

is personal to the Estate[,] and Henry Jacobs and Lynn Jacobs benefit nothing from the redemption or the issuance of the 'Certificate of Redemption' because they paid no money to redeem." (Bold font omitted.) He further explained that he "objects to the confirmation of the sale of [the real property] because [Jones] and his attorney . . ., threaten to sale [*sic*] the [real property] and only claim 50% interest when the Estate owns 100% of the property." He did not object to any specific term of the sale (e.g., the price).

## IV.  March 17, 2022 Hearing on Jones's Petition for an Order Confirming the Sale of the Real Property

Cooley appeared at the March 17, 2022 hearing on Jones's petition, representing himself. Jones, as administrator of Locklin's estate, was represented by counsel. Cooley stated the basis of his objection to confirmation of the sale as follows, in pertinent part: "I'm objecting on the fact that he's [Jones] only claiming half of the proceeds for this sale and just handing it over to some people that don't own it." Cooley claimed that 100 percent of the proceeds of the sale of the real property should go to the heirs of Locklin's estate. Without ruling on anything, the probate court continued the hearing on Jones's petition to May 20, 2022, the date scheduled for a hearing on Cooley's petition to determine ownership of the real property.

## V.  Cooley's Petition to Quiet Title to the Real Property

On May 16, 2022, four days before the hearing scheduled on the above-described petitions, Cooley, as a self-represented litigant, filed a verified petition to quiet title to the real property. The hearing on the quiet title petition was scheduled for August 20, 2022.

7

In the quiet title petition, Cooley asserted for the first time that he, *himself*, owned a 50 percent interest in the real property because he paid the defaulted property taxes and obtained a certificate of redemption of the property. Thus, he claimed Locklin's estate owned a 50 percent interest, he personally owned a 50 percent interest, and the Jacobses owned no interest in the real property. He further claimed that Jones, an heir of Locklin's estate, had "no vested title interest in the real property" because Jones failed to pay the property taxes, which were in default while Jones maintained possession of the property.

## VI.    May 20, 2022 Hearing on Jones's Petition for an Order Confirming the Sale of the Real Property

Cooley appeared at the May 20, 2022 hearing, representing himself. Jones, as administrator of Locklin's estate, and Lynn Jacobs, as Trustee of the Jacobs Family Trust, were also present and represented by separate counsel. A realtor for the seller, a realtor for the buyer, and representatives from the buyer also attended the hearing.

Counsel for Jones and counsel for Lynn Jacobs indicated their clients were aligned in their position that 50 percent of the proceeds from the sale of the real property would go to the estate and 50 percent to Lynn Jacobs as Trustee of the Jacobs Family Trust. Consistent with Cooley's petition to determine ownership of the real property and Cooley's objection to Jones's petition for an order confirming the sale of the real property, the probate court stated its understanding that Cooley was claiming the estate owned 100 percent of the real property (and the Jacobses owned no interest). Cooley did not correct the court's stated understanding, notwithstanding his claim in his recently filed petition to quiet title (set for hearing on August 20, 2022) that

8

the estate owned a 50 percent interest and he personally owned a 50 percent interest. The following exchange occurred between the court and Cooley:

"The Court: You were administrator of Dorothy's estate for eight years. You were appointed in 2013, and you were removed --

"[Cooley]: Yes.

"The Court: -- in 2021, in part because you weren't administering the estate and moving things forward. [¶] My question to you is this --

"[Cooley]: Well, that's because --

"The Court: Let me ask you this question: If you thought that the estate, Dorothy's estate, owned a hundred percent of the property and Lynn owned zero, why didn't you do something about that when you were at the helm? You have now, nine years later --

"[Cooley]: I --

"The Court: Let me finish my question. [¶] Nine years later, you're saying, hey, guess what? Lynn Jacobs is not an owner of this house. [¶] Why are you doing this now?"

Cooley responded that he spent several years trying to find an attorney "to deal with Lynn Jacobs's issue." Once he found one, the attorney quit when it became clear the probate court was going to remove Cooley as administrator of Locklin's estate.

Counsel for Jones and counsel for Lynn Jacobs urged the probate court to confirm the sale of the real property and place the proceeds in a blocked account pending resolution of Cooley's quiet title petition. Cooley stated: "I think what should happen is the house shouldn't be sold until we determine who is the owner. We haven't got there yet because you would be basically

9

denying the petition [to quiet title] before you actually heard it." Cooley then stated his belief that the estate owned a 50 percent interest in the real property and Jones was not entitled to any of it (but he did not express to the court his belief that he personally owned the other 50 percent interest, as alleged in his recently filed quiet title petition).

The probate court commented, "I see no reason not to have the property sold today to these buyers, and the estate at least gets money into the estate, that 50 percent that [Jones's] petition says belongs to the estate." Cooley stated he did not understand "the need to sell" the real property, representing that he had paid Locklin's only debt, her medical bills.

The probate court responded: "It is the job of the administrator to administer estate assets in a way that's fair for everybody. When you were the administrator, the house was not sold, and that was one of the reasons you got removed. Nothing was happening. The estate was not being closed. [¶] There are some estates in which the administrator of the estate, often with the consent of other family members, agrees that there should be some other disposition of the property. Some family member will get it. Somebody will live in the house. It won't be sold; it will be kept in the family.[3] [¶] But in this particular case, the administrator has determined it's in the best interest of everybody to sell the house, and that judgment strikes me as very sensible. That way money comes into the estate, and when push

_____

[3] Based on the record before us and Cooley's appellate briefing, there is no indication Cooley wants to hold onto his interest in the real property. Rather, he wants to delay the sale until after the probate court determines ownership interests in the real property.

comes to shove, when it's time for [Jones] to close out the estate, something that you had an opportunity to do for eight years but you didn't, then . . . money can be distributed to the three heirs [Cooley, Jones, and their sister], subject to you claiming [Jones] shouldn't get his third because of x, y, and z, and subject to [Jones] saying [Cooley] shouldn't get his third because of x, y, and z, things he did."

The probate court granted Jones's petition for an order confirming the sale of the real property to TUP (at a price of $400,000 for the estate's 50 percent interest), noting there were "no overbidders." The court explained that in overruling Cooley's objections, the court was "taking no position on [Cooley]'s quiet title petition as it relates to the alleged interest in this property of Lynn Jacobs." The court ordered Jones to post an additional bond in the amount of $300,000, and ordered counsel for Lynn Jacobs to establish a blocked account where 50 percent of the sale proceeds would be deposited.

The probate court ordered Jones's counsel to prepare an "order after hearing." The court explained to Cooley that the clerk would prepare a minute order summarizing the hearing, and Jones's counsel would prepare an order after hearing on a Judicial Council form, "reflecting the confirmation of sale," for the judge's signature.

The probate court continued Cooley's petition to determine ownership of the real property to July 12, 2022, and left Cooley's petition to quiet title on calendar for August 20, 2022.

## VII.  Probate Court's Orders and Cooley's Notices of Appeal

On May 20, 2022, the same day as the hearing, the probate court issued its minute order on Jones's petition for an order

11

confirming the sale of the real property. The minute order states that the court ordered Jones to prepare an order after hearing. On May 23, 2022, before the order after hearing issued, Cooley filed a notice of appeal (case No. B321355).

On June 21, 2022, the probate court entered the order after hearing on the Judicial Council form titled Order Confirming Sale of Real Property. The order, signed by the judge, indicates the court made the requisite findings, including that "[g]ood reason existed for the sale"; the "amount bid is 90% or more of the appraised value of the property as appraised within one year of the date of the hearing"; an "offer exceeding the amount bid by the statutory percentages cannot be obtained"; and the personal representative of the estate (Jones) "has made reasonable efforts to obtain the highest and best price reasonably attainable for the property." The order also requires an additional bond in the amount of $300,000 and states that "[n]et sale proceeds must be deposited by escrow holder in a blocked account to be withdrawn only on court order." The order specifies the name and address of the bank where the blocked account was set up. On July 5, 2022, Cooley filed a notice of appeal from the June 21, 2022 Order Confirming Sale of Real Property (the present appeal, case No. B322049).

On August 1, 2022, this court dismissed Cooley's appeal in case No. B321355 (the first appeal filed on May 23, 2022), after he defaulted by failing to pay the filing fee and failing to file a case information statement. The remittitur in case No. B321355 issued on October 7, 2022.

Cooley, through retained appellate counsel, has filed briefing in the present appeal, case No. B322049 (the second appeal filed on July 5, 2022).

## DISCUSSION

## I.    TUP's Motion to Dismiss the Present Appeal

Respondent TUP, the purchaser of the real property, filed a motion to dismiss the present appeal, arguing: "Cooley filed two successive Notices of Appeal from the same Order Confirming Sale of Real Property in favor of the buyer of the real property, TUP, but the first of those appeals was dismissed with prejudice and the remittitur issued, affirming the order and making the decision by the trial court on the confirmation of the sale of the real property final. The two successive appeals were never consolidated or even related. This reviewing court is without jurisdiction to hear the pending appeal and cannot grant any relief. The pending appeal must, therefore, be dismissed. In her respondent's brief, Lynn Jacobs, as Trustee of the Jacobs Family Trust, also urges us to dismiss the present appeal for the same reasons.

The motion to dismiss is not well taken, and we deny it. Cooley's first notice of appeal, filed on May 23, 2022, was premature. The May 20, 2022 minute order states that the probate court ordered Jones to prepare an order after hearing. "A minute order that directs the preparation of a formal written order is not itself appealable." (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 101.)

Cooley filed a second notice of appeal on July 5, 2022, timely appealing from the probate court's June 21, 2022 Order Confirming Sale of Real Property, an appealable order. While the second appeal (the present appeal) was pending, this court dismissed Cooley's first appeal because he was in default for failure to pay the filing fee and failure to file a case information statement. This court did not lose jurisdiction over the present

13

appeal from the June 21, 2022 appealable order when we dismissed Cooley's appeal from a prior nonappealable order. TUP and Jacobs cite no authority demonstrating otherwise.

*Estate of Sapp*, *supra*, 36 Cal.App.5th 86, cited by TUP in its motion to dismiss and by Jacobs in her respondent's brief, is distinguishable. There, the appellant filed a notice of appeal from a nonappealable order, a May 9, 2016 tentative decision. The Court of Appeal dismissed the appeal on August 17, 2016, after the appellant defaulted by failing to provide the appellate court with an appealable order. Two weeks later, on September 2, 2016, the trial court issued its judgment. The appellant did not file a notice of appeal from the September 2, 2016 judgment. A month and a half later, on October 19, 2016, the remittitur issued on the appellant's dismissed appeal. The appellant filed a motion to recall the remittitur, attaching the September 2, 2016 judgment, but the Court of Appeal found no good cause to recall the remittitur. In a subsequent appeal from a different order and judgment, filed on March 24, 2017, the appellant attempted to challenge rulings that were only appealable from the September 2, 2016 judgment. The Court of Appeal stated in its opinion that the dismissal of the appeal from the nonappealable May 9, 2016 tentative decision "had the effect of affirming the September 2, 2016 judgment," and the appellant was "barred from challenging the September 2, 2016 judgment . . . in this or any other appeal." (*Id*. at p. 100.)

Relying on *Estate of Sapp*, TUP and Jacobs argue that the dismissal of Cooley's appeal from the nonappealable May 20, 2022 minute order had the effect of affirming the June 21, 2022 Order Confirming Sale of Real Property. We disagree. Cooley timely appealed from the June 21, 2022 appealable order, and

14

that appeal (the present appeal) was pending when we dismissed the appeal from the prior nonappealable order (unlike the appellant in *Estate of Sapp*, who never appealed from the appealable judgment). The dismissal of the premature first appeal did not interfere with our jurisdiction over the pending and valid second appeal.

## II. Cooley's Appeal

### A. The Probate Court Did Not Err in Finding the Sale Was to the Advantage of the Estate and in the Best Interest of the Interested Persons

Under Probate Code[4] section 10000, a personal representative of an estate may sell real property of the estate under certain, enumerated circumstances, including, "(a) [w]here the sale is necessary to pay debts, devises family allowance, expenses of administration, or taxes" or "(b) [w]here the sale is to the advantage of the estate and in the best interest of the interested persons." Although Jones's petition for an order confirming the sale of the real property alleged both of these circumstances, the probate court only made a finding that the latter circumstance applied. Cooley contends "there was no evidence supporting the [probate] court's determination that the sale of the [real property] was in everyone's best interest" and, therefore, it was error for the court to confirm the sale.

"It is well settled that ' "[a] judgment or order of the lower court is presumed correct." ' [Citation.] An appellant must affirmatively demonstrate error occurred and, when the appellate record is silent on a matter, the reviewing court must indulge all

---

[4] Undesignated statutory references are to the Probate Code.

15

intendments and presumptions that support the order or judgment." (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1101, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An "order confirming the sale of real property should be affirmed on appeal if there is any substantial evidence to support it," and "the determination of the sufficiency thereof lies in the sound discretion of the probate court." (*Estate of Weaver* (1958) 158 Cal.App.2d 367, 372.)

The probate court based its finding that the sale is to the advantage of the estate and in the best interest of the interested persons, in part, on a history of the case not reflected in the appellant's appendix before us. The court noted that one of the reasons Cooley was removed as the administrator of Locklin's estate is that he failed to sell the real property—the only asset of the estate—during the eight years he served as administrator.

Jones, as administrator of Locklin's estate, wanted to sell the estate's interest in the real property to TUP. Lynn Jacobs, as Trustee of the Jacobs Family Trust, wanted to sell her interest in the real property to TUP. Jones and Cooley's sister, the only other heir of Locklin's estate, did not raise an objection to the sale.

Cooley did not express an interest in holding onto the real property indefinitely. He only sought to delay the sale until after the probate court determined the ownership interests. But he did not show that going forward with the sale prejudiced his interest in any way. For example, he did not assert that the sale price was low or that Jones could secure a higher price if he delayed the sale.

Under these circumstances, Cooley has not demonstrated the probate court erred in finding that the sale is to the

16

advantage of the estate and in the best interest of the interested persons.

**B.     Cooley Has Not Demonstrated That the Sale Violated Section 10309**

Under section 10309, "no sale of real property at private sale shall be confirmed by the court unless" certain, enumerated conditions are satisfied, including that the "real property has been appraised within one year prior to the date of the confirmation hearing" and the "valuation date used in the appraisal . . . is within one year prior to the date of the confirmation hearing."  (§ 10309, subd. (a)(1)-(2).)  Cooley contends it is "impossible to confirm if the appraisal complied with the requirements of Probate Code section 10309" because "nowhere on the appraisal document does it state the date on which this appraisal allegedly occurred or what valuation date was used for the appraisal."  He adds, "Without any such evidence, the requirements to confirm the sale were not met, and it was thus improper for the [probate] court to have made the confirmation."  This contention lacks merit.

The Judicial Council form for the Report of Sale and Petition for Order Confirming Sale of Real Property does not require the petitioner to list the date of appraisal or date of valuation.  The form only requires the petitioner to fill in a dollar amount for the "[r]eappraised value within one year before the hearing," which Jones did.  In the June 21, 2022 Order Confirming Sale of Real Property, the probate court made a finding that the "amount bid [by TUP] is 90% or more of the appraised value of the property as appraised within one year of the date of the hearing."

17

Substantial evidence supports the probate court's findings that the real property was reappraised within one year prior to the date of the confirmation hearing and that the valuation date used in the appraisal was within one year prior to the date of the confirmation hearing. The hearing on the petition for an order confirming the sale of the real property commenced on March 17, 2022 and was continued to May 20, 2022, when it concluded. Less than a year before the hearing, on September 3, 2021, Jones was appointed as administrator of Locklin's estate. Thereafter, he secured a reappraisal of the real property for purposes of a sale. On October 15, 2021, the probate referee declared that he appraised the real property; and an attachment to the Inventory and Appraisal form lists the appraised value as $435,000 for a 50 percent interest and $870,000 for the entire interest in the real property. At the time of Locklin's death in June 2010, the appraised value of the estate's 50 percent interest in the real property was $115,000. The reasonable inference from this evidence is that the appraisal date and the valuation date occurred after Jones was appointed as administrator of Locklin's estate, which was within one year prior to the date of the confirmation hearing. We have no cause to disturb the order.

We note that Cooley did not question the appraisal or valuation date in the probate court. Nor did he challenge the appraised value of the real property.

### C. The Probate Court Did Not Abuse Its Discretion in Confirming the Sale Before Resolving Cooley's Quiet Title Petition

Cooley contends the trial court abused its discretion "when it confirmed the sale without first resolving the issue of who held title to the [real property], especially considering the lack of any

18

exigent circumstances necessitating the sale prior to Cooley's quiet title petition." Cooley has not shown an abuse of discretion.

In confirming a sale, a court should exercise its discretion "in view of all the surrounding facts and circumstances and in the interest of fairness, justice and the rights of the respective parties. [Citation.] The proper exercise of discretion requires the court to consider all material facts and evidence and to apply legal principles essential to an informed, intelligent, and just decision." (*Cal-American Income Property Fund VII v. Brown Development Corp.* (1982) 138 Cal.App.3d 268, 274.) "The status of the litigation and the effect a sale would have on the parties are both facts and circumstances the court must consider before confirming a sale." (*Id.* at p. 276.) The court should consider whether an immediate sale of the property would result in the loss of a party's "opportunity to litigate its rights to the property." (*Ibid.*)

Here, the probate court considered whether the immediate sale of the real property would interfere with Cooley's quiet title petition and determined it would not. Cooley's only objection to the sale was that Jones intended to give half the proceeds to Lynn Jacobs. The court obviated this concern by ordering that 50 percent of the proceeds be deposited in a blocked account pending resolution of Cooley's quiet title petition. Cooley does not explain how he was harmed by the sale.

Cooley relies on *Estate of Bazzuro* (1911) 161 Cal. 71 in support of his contention that the probate court erred in not resolving the quiet title petition before it confirmed the sale of the real property. The case is readily distinguishable. There "a cloud over the title" affected the property's value, such that the "property sold for less than one sixth of its real value, because of

19

defects in the title." (*Id*. at p. 76.)  Here, in contrast, Cooley neither claimed nor presented evidence below that the dispute over ownership interests affected the price of the sale, and there is no indication that it did.

Under the facts and circumstances of this case, the probate court did not abuse its discretion in confirming the sale.

### D.    The Sale of the Property Did Not Violate a Stay

Cooley contends the sale of the real property to TUP is "void" because it violated "an automatic stay."  He asserts that the probate court could not enter the June 21, 2022 Order Confirming Sale of Real Property because his notice of appeal, filed on May 23, 2022, "resulted in an automatic stay and divested the [probate] court of jurisdiction."  Not so.  A premature appeal from a nonappealable minute order cannot divest the trial court of jurisdiction to enter the final, appealable order.  Cooley cites no authority holding otherwise, and we are aware of none.

Cooley raises other issues that are not properly before us in this appeal.  He contends that when he filed his second notice of appeal (the present appeal) on July 5, 2022, an automatic stay prevented the recordation of a grant deed transferring the real property to TUP.  He also contends that TUP's subsequent sale of the real property to a third party is void because TUP never acquired good title to the property.  In support of these contentions, Cooley relies on documents that are attached to TUP's motion to dismiss, but are not part of the record on appeal.  We decline to take judicial notice of these documents on the court's own motion because they are not germane to our resolution of this appeal.  The matter before us is whether the probate court erred in issuing the June 21, 2022 Order

20

Confirming Sale of Real Property, and we have concluded it did not, for the reasons explained above.

## DISPOSITION

The order is affirmed. Respondents TUP and Lynn Jacobs, as Trustee of the Jacobs Family Trust are entitled to recover costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


WEINGART, J.

21